(No. 33535.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT LAMPHEAR *et al.,* Plaintiffs in Error.

*Opinion filed September 23, 1955.*

EUGENE L. MCGARRY, of Chicago, for plaintiffs in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

Robert Lamphear and Roy Jurgensen (herein called defendants) were indicted in the criminal court of Cook County for the crime of robbery while armed with a dangerous weapon. The second count of the indictment contained the additional charge that defendant Lamphear had been indicted and convicted in 1948 for burglary and sentenced to the penitentiary for a term of not less than two and not more than eight years.

After a jury trial, a verdict was returned finding the defendants guilty in the manner and form charged in the indictment. There was a specific finding of guilt in the case of Lamphear as to the so-called habitual count. Jurgensen was sentenced to the penitentiary for a term of not less than fifteen years, and Lamphear was sentenced to life imprisonment.

In asking this court to reverse the convictions, counsel for the defendants contends: (1) The trial court lacked jurisdiction to try defendant Lamphear as an habitual criminal. (2) The jury was improperly and inaccurately instructed. (3) The evidence is insufficient to support the convictions.

First, it is contended on behalf of defendant Lamphear that the court lacked jurisdiction to try him as an habitual criminal pursuant to section 602 of the Criminal Code (Ill. Rev. Stat. 1953, chap. 38, par. 602.) To sustain this position, it is not argued that the statute is unconstitutional but that the State here did not properly proceed thereunder.

Said statute provides as follows: "Whenever any person who has been convicted of burglary, grand larceny, horse stealing, larceny of a motor vehicle, larceny from the person, rape, robbery, sale of narcotic drugs, forgery, arson, counterfeiting, kidnapping, confidence game or extortion by threats when the punishment was imprisonment in the penitentiary, shall thereafter be convicted of any of such crimes, committed after the first conviction, the punishment shall be imprisonment in the penitentiary for the full term provided by law for such crimes at the time of the last conviction therefor; and whenever any such person, having been so convicted the second time, as above provided, shall be again convicted of any of said crimes, committed after said second conviction, the punishment shall be imprisonment in the penitentiary for a period of not less than fifteen (15) years; provided that such former conviction, or convictions, and judgment or judgments shall be set forth in apt words in the indictment."

As noted above, the indictment in this case contained a count specifically charging the defendant Lamphear with having previously been convicted of burglary, one of the crimes enumerated in the statute; and the fact of such prior conviction was established by stipulation.

There clearly was a compliance with the statute, the last part of which states that *such former conviction,* or convictions, shall be set forth in apt words in the indictment.

Apparently counsel for the defendants believes the statute requires the issuance of two indictments, one charging armed robbery and the other charging the defendant with being an habitual criminal. This contention must rest upon

the premise that the so-called Habitual Criminal Act creates a new crime. Such is not the case. Rather, the statute fixes a mandatory punishment for the subsequent crimes of which the defendant may be found guilty. Moreover, in directing that the former conviction be set forth in apt words in *the* indictment, the legislature showed it intended the fact of the prior conviction to be alleged in the indictment for which it is sought to administer the enhanced punishment.

We conclude that the sentence, as well as the procedure adopted, was in accord with the requirements of section 602; therefore, we find no merit in the contention that the criminal court lacked jurisdiction of this aspect of the case.

In *People* v. *Manning*, 397 Ill. 358, this court did express misgiving as to the procedure established in section 602, stating at page 361 : "It is conceivable that the introduction of such fact [the prior conviction] might influence a jury as to the character of the defendant and cause it to conclude that if he had been formerly convicted of a felony, there was a strong probability that he was guilty of the second offense. The requirements of the law as to the degree and character of proof required to establish the principal offense are not changed and the fact that evidence of the former conviction might create an adverse impression with the jury is not, in view of the requirements of the act, a denial of due process of law." It is reasonably apparent that the evidence of the prior conviction, properly related only to the matter of punishment, might affect the jury's determination of guilt or innocence.

Likewise, other features of the statute are subject to reasonable criticism. The provision that on the subsequent conviction the maximum penalty be imposed, does not permit any flexibility in adjusting the punishment to the particular violation or allow for any mitigation, however much justified in an individual case. In addition, the maxi-

mum penalty may be unduly severe, especially where a life sentence is mandatory, as in the instant case.

In all of these respects our statute follows the form of the earlier habitual criminal acts. Dissatisfaction with their operation has resulted in widespread legislative modification. (See U. Chi. Law Revision Series, No. 1, p. 16ff.) The constitutionality of our statute has, however, been sustained. (*People* v. *Lawrence*, 390 Ill. 499; *People* v. *Manning*, 397 Ill. 358; *People* v. *Kirkrand*, 397 Ill. 588.) Correction of defects in the statute which experience has brought to light is a matter for the General Assembly.

Second, it is contended that the trial court erroneously instructed the jury.

At the request of the State, the jury was instructed that before a defendant can avail himself of the defense of alibi, the proof must cover the whole of the time of the commission of the crime and be supported by such facts and circumstances in evidence as are sufficient (when considered in connection with all other evidence in the case) to create a reasonable doubt of the truth of the charge.

Then, at the request of the defendants, the court instructed that it was not necessary, in order to establish the defense of alibi, for the defendants to produce evidence to cover the whole time of the transaction in question; but that the proof is sufficient if it covers part of the time when the crime was committed so as to render it highly improbable, if not impossible, that the defendants could have committed the act charged.

Counsel argues that these instructions are in conflict and tended to confuse the jury.

The giving of the State's instruction did not constitute error (See *People* v. *Herbert*, 361 Ill. 64; *People* v. *Gasior*, 359 Ill. 517; *People* v. *Grizzel*, 382 Ill. 11;) and the instruction tendered at the defendants' request, even though somewhat in conflict, could not have prejudiced the defendant. If anything, it only detracted from and dimin-

ished the effect on the jury of the State's instruction. Thus, the error complained of could not reasonably have affected the result. Cf. *People* v. *Skelly,* 409 Ill. 613.

After the court had read its instructions, it introduced the forms of verdict to be submitted by saying that the court was "going to submit to you three forms of verdict in reference to the defendant, Robert Lamphear. It will be necessary for you to sign one and possibly two. The forms of verdict read as follows, and I will explain to you as I go along." It is argued that this language amounted to an attempt to force a verdict. However, an examination of the entire statement indicates that the language pertained to which verdict should be signed if, and only if, the jury decided upon the guilt or innocence of the respective defendants. We do, not believe that it tended to force a verdict. See *People* v. *Bydalek,* 381 Ill. 330.

Third, counsel for the defendants argues that the identification evidence was insufficient, leaving a reasonable doubt as to the defendants' guilt.

The State's case was based primarily upon the testimony of Mrs. Mary Zyzanski, a tavern proprietor, who identified the defendants as the men who robbed her of approximately $50 at around 10:30 P.M. on March 17, 1954. She testified to the following: The defendants walked in her tavern at about 10:00 P.M., at which time she was conversing in Polish with three other patrons (Joseph Sreniawski and his father and mother). She did not know the defendants, and at first refused to sell them beer, claiming they were too young. But they convinced her they were old enough and were served. Defendant Lamphear told her to give the other customers (and herself) a drink on him. All declined this offer, except the older man (Joseph Sreniawski's father), who had a shot of whisky. In about twenty minutes or so, the others left, and Mrs. Zyzanski, having "bad feelings" and suspicions about "the boys," told them she was going to close up, although it was earlier than

her normal closing hour. However, defendant Jurgensen (whom she referred to as the "blond fellow") pulled a gun on her and said "don't you move or we will kill you." Defendant Lamphear ("the dark fellow") jumped across the bar and took approximately $50 from the cash register. After warning her not to call the police, they left by the back door.

Mrs. Zyzanski said she called the police immediately, and two officers came to her tavern. The officers reported to the station what Mrs. Zyzanski told them as to the robbers' description.

A few hours later (about 2:00 P.M., March 18, 1954), the defendants were arrested in a restaurant by an off-duty policeman, who was attracted to them by a disturbance in which they were involved. In searching defendant Lamphear, he found a .38 caliber automatic pistol. He said Jurgensen had on an orange jacket, while Lamphear wore a blue jacket that was reversible with blue and white checks underneath the flaps of a gabardine collar.

The following evening, at around 7:30 or 8:00 P.M., March 18, 1954, Mrs. Zyzanski was taken to a cell at the police station where the defendants alone were being held, and she identified them as the ones who robbed her the night before. In making the identification, she told the officer who accompanied her that defendant Lamphear had on a blue checked jacket and defendant Jurgensen wore an orange colored jacket.

The State also called Joseph Sreniawski, one of the patrons in the tavern who left just before the robbery occurred; but in response to a question of whether the defendants were the two men he saw in the tavern that night, he answered "No, I can't say definitely they are." All he could remember was that one of them had light hair, and they were about the same age, height and weight as he—30 years old, 5′ 9″, 145 lbs. (Defendant Lamphear was 23 years old and weighed 130 lbs.; Jurgensen was 20

years old. There is nothing further in the record relative to their physical stature or appearance.)

A stipulation that the defendant Lamphear had been convicted of burglary in 1948, as alleged in the second count of the indictment, completed the State's case in chief. The other patrons, including the man who is said to have received the free drink, were not called to testify, nor was their absence accounted for.

The defense was alibi, based upon the defendants' testimony and four others: Lamphear's wife, Jurgensen's sister, and Mr. and Mrs. Charles Meyer who operated a tavern at which the defendants were said to be at the time of the alleged robbery.

Both defendants testified substantially the same as to their whereabouts on the evening in question and denied Mrs. Zyzanski's accusations implicating them in the alleged robbery. Each said they were attending a St. Patrick's Day party at a tavern operated by Charles Meyer, located about six miles from the scene of the robbery. The testimony of Lamphear's wife and Jurgensen's sister furnished corroboration. Mrs. Lamphear said she left a bunco party shortly after 10:00 P.M. that night and walked to the Meyer tavern (Englewood Arms Tap), arriving there at 10:30 or 10:35 P.M. She stayed only briefly, having had an argument with her husband. She saw both defendants at the tavern, and as she was leaving met Jurgensen's sister coming in. The latter said she was with the defendants at the tavern from the time she arrived (around 10:30 P.M.) until 1:00 A.M. the following morning. At no time, she testified, did either Lamphear or her brother leave the tavern.

In addition, the defense called Mr. and Mrs. Meyer. Mrs. Meyer said she got to the tavern that night at approximately 10:30 P.M., bringing with her food for a buffet luncheon which was served. When she arrived the place was crowded, and according to her testimony, the

defendants, whom she had known previously, were there, as was Jurgensen's sister. And, she said, they did not leave the place until around 1:10 A.M. the next morning.

Charles Meyer, the owner of the tavern, said he knew both defendants and saw them and Jurgensen's sister at the St. Patrick's Day party. He observed them using the buffet and served them drinks. He said that to the best of his knowledge they were there all evening.

After the defense rested, the State was permitted to call Meyer for further cross-examination and questioned him about a conversation the witness was said to have had with Lt. Edward O'Malley at the police station. Meyer denied that he told Lt. O'Malley that Jurgensen had been in and out of the tavern a number of times that evening, but he did say that he told the officer that Lamphear had been in and out a number of times.

Lt. O'Malley was then permitted to testify over objection that when he talked with Meyer, sometime in March, 1954, the latter told him that the defendants had left the tavern several times, telling him good-bye as they did so. In admitting this testimony, the court said "It was in the presence of the defendants and is proper," but afterward it was established that the conversation between Lt. O'Malley and Meyer was not in the defendants' presence, and the court ordered the jury to disregard it. No error is assigned by the defendants as to this, nor does the State make any argument regarding it. After he talked with Meyer, the lieutenant said he talked with defendant Jurgensen and said "Your alibi has been broken, you might as well tell us," to which Jurgensen replied "Well, it might have been my job." On cross-examination, Jurgensen was asked whether he remembered saying to Lt. O'Malley, when the officer said his alibi had been broken and he might as well admit it, "I don't know, I was drunk." Jurgensen denied he said this, but did say that before anything was mentioned about Mr. and Mrs. Meyer coming to the police

station, the lieutenant had said "I am going to break your abili and break your head."

Finally, the State entered by way of stipulation, evidence that in 1948, defendant Lamphear had pleaded guilty to two burglary indictments and was sentenced to the penitentiary. These pleas were entered on February 20, 1948, the same day the conviction of burglary alleged in the second count of the instant indictment was obtained, also by plea of guilty. And it was further stipulated that in 1951, defendant Jurgensen pleaded guilty to larceny of a motor vehicle and was placed on probation for a term of five years, the first six months to be served in the county jail.

The determination of the guilt or innocence of an accused is a matter committed, in the first instance, to the jury, and this court will not disturb a verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to justify our entertaining reasonable doubt as to the defendant's guilt. (*People* v. *Leach,* 398 Ill. 515.) It is within the province of the jury to determine the credibility of witnesses and weigh their testimony, and we will not substitute our judgment for that of the jury merely because the evidence is conflicting. *People* v. *Wheeler,* 5 Ill. 2d 474.

We have recognized that a positive identification by one witness who has ample opportunity for observation may be enough to support a conviction. (*People* v. *Sesto,* 364 Ill. 38.) And the fact that an accused is not placed among a group of persons in being presented to a witness for identification does not fatally weaken the evidence of identification, but bears only upon the weight to be accorded that evidence. (*People* v. *Coli,* 2 Ill. 2d 186.) Thus, where a positive identification has been made, a guilty verdict may be sustained notwithstanding there may be otherwise uncontradicted alibi evidence and even though the alibi witnesses may be greater in number than those identifying the accused. *People* v. *Wheeler,* 5 Ill. 2d 474.

In the instant case, Mrs. Zyzanski had ample opportunity to observe the men who robbed her. They were in her presence some thirty minutes, and even before one of them pulled the gun she had suspicions about them. At the police station her identification was positive and immediate. In addition, she told the officer that defendant Lamphear wore a blue check jacket and defendant Jurgensen had an orange jacket. It will be noted that this corresponded to the description given by the officer who arrested the defendants. Finally, the identification took place the next day after the alleged crime was committed, when the event was presumably still fresh in her mind.

In seeking corroboration for Mrs. Zyzanski, the State called Joseph Sreniawski, one of the patrons who left just prior to the alleged robbery. This witness said he could not definitely say the defendants were the two men who were in the tavern, but he did say that one of them had light hair and they were about the same age, height and weight as he. While this witness was testifying, the jury had the opportunity to make comparisons and to judge accordingly the weight to be given this testimony.

Opposed to this is the evidence of alibi. This evidence certainly posed a serious question of fact for the jury, but when considered in its entirety and in relationship to the other evidence in the record, we cannot say, under established rules, that it was sufficient to require our setting aside the jury's determination. In appraising the evidence, the jury was entitled to believe that one of the important alibi witnesses, Charles Meyer, was, at least to some extent, impeached. He testified on direct examination that to the best of his knowledge the defendants were in his tavern during the entire evening, but on cross-examination he admitted telling the police that defendant Lamphear had left the tavern at different times. Moreover, in that testimony which the court told the jury to disregard, the police lieutenant said that Meyer told him that both defendants had

left the tavern during the evening in question, telling him good-bye as they did so. While the court instructed the jury not to consider this evidence, the testimony was admissible for purposes of impeaching the witness. This prior inconsistent statement relative to defendant Lamphear alone was a circumstance which the jury could take account of in considering the evidence of this witness; and we cannot say the jury acted unreasonably in preferring to believe the prosecution witnesses. Additionally, the statement of the lieutenant that defendant Jurgensen admitted to him that "it might have been my job," was entitled to some weight. In any event, these all are matters to be decided by the jury, and as aforesaid, where the evidence is not so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to justify our entertaining reasonable doubt of the defendants' guilt the jury's verdict will be sustained. For the reasons stated, the convictions are affirmed.

*Judgments affirmed.*