People of the State of Illinois, Plaintiff-Appellee,
v. Walter Bowling, Defendant-Appellant.

Gen. No. 51,042.

First District, First Division.

April 10, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Walter Bowling, was charged with the crime of robbery and after a waiver of a jury trial was found guilty by the trial court and sentenced to the Illinois State Penitentiary for a term of one to three years. On appeal the defendant's sole contention is that the evidence is insufficient to support his conviction because the identity of the defendant was not proved beyond a reasonable doubt.

The evidence establishes that on July 7, 1965, Arnold Schreiber was employed at Arne's Men's Shop at 3154 West Cermak Road and at about 5:00 p. m. was showing a man some shirts when the man drew a gun. He said he was ordered to show him where the cash was if he didn't want to be killed, and the man took about $300. He also testified that the lighting in the store was good, that the man was in the store for approximately four to seven minutes during which time he spoke to him while

waiting on him and was close to him all the time. Initially, at police headquarters, he described the robber as a man with "very sparse hair along the sides" and from a group of 75 to 100 pictures, selected a picture of Arthur Bowling, the defendant's twin brother. He said at that time that this was a picture of the man except that the robber had thinner hair than the picture had shown. The police then had a warrant issued for Arthur Bowling. Subsequently, he identified the defendant, Walter Bowling, as the robber at the time of the trial and had previously identified him from a group of four men in a police lineup.

Detective Thomas Morley testified he interviewed Schreiber who gave him a description of the robber and selected the picture of Arthur Bowling from the police files. He said he placed the picture in the police bulletin and made inquiries at different addresses. Subsequently, on July 25th, Walter Bowling, the defendant, came to police headquarters and told him that his twin brother, Arthur, was dead and consequently could not have committed the robbery. Morley said "and I told him that I was aware of that and I thought that he committed the robbery as he fitted the description properly and he is his brother's twin and he has a little less hair than his brother," and he placed Walter Bowling under arrest. On cross-examination he testified that prior to July 25th he had left a message for the defendant at the home of Patricia Malina. On redirect he testified that the picture of Arthur Bowling which Schreiber identified was the exact likeness of the defendant except that Arthur had more hair.

Patricia Malina testified for the defense that the defendant had lunch with her on July 7th, in her apartment, when her sister was present and that her father, Harry Buchanan, also came there at 3:30 p. m. She said the defendant and she left the apartment together

between 5:30 and 6:00 p. m., walked to a store and upon their return, a half hour later, had dinner with her father at the apartment. She said that when she and her father left to visit a sick uncle, at about 7:30 p. m., the defendant was still in her apartment. Her father, Harry Buchanan, also testified and corroborated this portion of Patricia's testimony. On cross-examination she further testified that she and the defendant had been friends for over three years. She said Detective Morley had been to her apartment prior to defendant's arrest and told her he "wanted to see Walter about . . . something about his dead brother's papers." She denied she told him that she hadn't seen the defendant for a couple of months and she didn't know where he was.

The defendant denied he committed the robbery. He testified that someone told him his brother was wanted for armed robbery so he went to the police and told them his brother had been dead for three years and "I showed them the paper where he was dead and he said O.K. that is all." He said he told the police he could be reached at Miss Malina's and later received a call from her that the police were looking for him. When he went to police headquarters he said Detective Morley said, "you and your brother are alike except the nose has been broken." He said they put him in a lineup with four other men and they were told to say "This is a holdup, you give me your money or I'll kill you" and then Schreiber identified him. He said he was at Miss Malina's home on the day in question from 11:00 a. m. to about 6:00 p. m. when they left to go to a store and he returned with her to the apartment in about one-half hour. He said Mr. Buchanan came to the apartment about 3:00 p. m. and left about 7:30 p. m. On cross-examination he testified that he and his brother resembled each other identically until he got his nose brok-

en. He denied he told Detective Morley that he worked at the Burlington Railroad all day on July 7th and slept there.

Detective Morley was called as a rebuttal witness by the State and testified that when he interviewed Patricia Malina she told him she hadn't seen the defendant for many months and that they weren't seeing each other anymore. He also had questioned Harry Buchanan who told him that on July 7th he visited his brother from 2:00 to 2:30 p. m. and then drove to his sister's house where he spent the rest of the night. He also testified that on the day when Schreiber identified the defendant at the lineup, the defendant said he couldn't have committed the crime because he worked for the Burlington Railroad on the date in question. He said the defendant related to him in detail what he ate for breakfast, lunch and dinner and said he slept there.

The defendant contends the evidence is insufficient to support an identification beyond all reasonable doubt. We do not agree. It is true, as defendant states, that Schreiber first identified the picture of defendant's brother. It is argued that the State cannot obtain any solace from the fact that Schreiber said his assailant had less hair and the defendant had less hair. He stresses that there was no evidence of his brother's age at the time the picture was taken and suggests that if the picture was a few years old at the time of the robbery he also would have less hair. He also argues that evidence is lacking to show that his brother is in fact dead. Here we note that the defendant by his own testimony produced a paper at the police station to prove the death of his twin brother. Defendant further argues that his voluntary appearance at the police station was the action of an honest man, not a guilty one, all of which he insists raises a reasonable doubt of his guilt.

In support of the argument that there exists a grave doubt of his guilt, defendant cites People v. Gooden, 403

Ill 455, 86 NE2d 198. There, unlike here, the defendant for a good part of the time was out of the presence of the prosecuting witness who told police that the principal distinguishing feature of the robber was his mustache, which he described as peculiarly thin and extending the width of his mouth, yet when he selected a picture it was that of a man without a mustache.

█ We have carefully examined the record and it shows when Schreiber selected the picture of the defendant's twin brother he immediately qualified his answer by stating that his assailant had less hair. By defendant's own testimony, he and his brother were identical twins. When Schreiber made a positive identification of the defendant at the lineup, he also made a voice identification and a positive identification at the trial. Schreiber testified that he discussed various merchandise with the defendant for four to seven minutes and he observed him under very good light.

█ The defendant further contends that the court disregarded the evidence of defendant's alibi. He emphasizes that his testimony that he was with Patricia Malina during the time of the robbery is corroborated by her and her father. Viewed in totality, the defendant's alibi witnesses create nothing more than conflicting evidence and it is well settled that this court will not weigh conflicting evidence nor judge the credibility of witnesses. In People v. Ellis, 26 Ill2d 331, 333, 186 NE2d 269, the Court said:

> While it is urged that Dumbrys had some doubts about the defendant's identity, the record discloses to the contrary that the complaining witness, who had ample opportunity to observe the robbers, made a positive identification of defendant from a picture, at the lineup and in the courtroom. And as to the contention that the alibi testimony should have been accepted over the testimony of the prosecution's witnesses, it was the function of the trial court, as

the trier of fact, to determine the credibility of the opposing witnesses and the weight to be afforded their testimony. . . .

■ ■ The manner in which a suspect is identified goes to the weight to be given the identification testimony. People v. Lamphear, 6 Ill2d 346, 128 NE2d 892. Detective Morley testified that the statements made to him by the defendant's girl friend and her father were contradictory to their testimony. The trial judge saw and heard the witnesses and chose to believe the State's witnesses rather than the alibi evidence. This is within the province of the court and we find there was ample evidence to support his conclusions and therefore we find no reason to disturb the finding of guilty. People v. Ellis, 26 Ill2d 331, 186 NE2d 269.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.