The People of the State of Illinois, Plaintiff-Appellee, *v.* Victor Bellamy, Defendant-Appellant.

(No. 57275;

First District (2nd Division)—June 26, 1973.

Charles A. Boyle, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Defendant, Victor Bellamy, was charged with a burglary allegedly committed on 8 June 1954. (Ill. Rev. Stat. 1953, ch. 38, sec. 84.) The in-

dictment also charged that he had been previously convicted of burglary, which brought him within the Habitual Criminal Act. (Ill. Rev. Stat. 1953, ch. 38, sec. 602.) He was found guilty by a jury and judgment was entered on the verdict and defendant sentenced to the Illinois State Penitentiary "for the term of life", as required by section 602.

On this late appeal (the facts with respect to which appear in the latter half of this opinion), defendant argues: (1) the mandatory life sentence was unconstitutional; (2) the court failed to give limiting instructions to the jury, which denied him a fair trial; and (3) the State's closing argument was so prejudicial that it denied him a fair trial.

The evidence showed that the complaining witness, Mrs. Burton, returned home in the early afternoon to find defendant lying face down on the floor in her bedroom; she then left the apartment by the back steps, where she saw the janitor and his 18 year old son. When defendant came down the back steps, shortly thereafter, she pointed him out to the janitor and his son, who gave chase. Mrs. Burton later picked the defendant out of a four-man lineup and was present when he confessed his guilt to the arresting police officer. Defendant also took the stand and openly admitted the burglary in question and his previous conviction for burglary in 1951, reciting in some detail his previous prison experiences to explain to the jury his state of mind when he committed the second burglary.

The prosecutor, during his argument, referred to defendant as "that sick man, that mentally sick man"; defendant objected and the court ordered it stricken. The prosecutor also discussed defendant's telling the judge that he didn't want the public defender as his counsel; that a Chicago Bar Association lawyer was then appointed but was refused by defendant; and that his current counsel (who represented him at trial only during the presentation of the State's case in chief) then was appointed. Defendant frequently interrupted the prosecutor's closing argument.

■■ In respect of defendant's first contention, it is well settled that the penalty to be attached to criminal behavior is a matter for the legislature. (*People v. Smith* (1958), 14 Ill.2d 95, 150 N.E.2d 815.) The States are free to enact habitual criminal statutes designed to deal with recidivism: "The rate of recidivism is acknowledged to be high, a wide variety of methods of dealing with the problem exists, and experimentation is in progress." *Spencer v. Texas* (1967), 385 U.S. 554, 566.

■■ The issue is the constitutionality of the Habitual Criminal Act and not its wisdom. The latter has been called into serious question. As the Illinois Supreme Court, in again upholding the constitutionality of the

Act, said (*People v. Lamphear* (1955), 6 Ill.2d 346, 350-351, 128 N.E.2d 892):

> "In *People v. Manning*, 397 Ill. 358, this court did express misgiving as to the procedure established in section 602, stating at page 361: 'It is conceivable that the introduction of such fact [the prior conviction] might influence a jury as to the character of the defendant and cause it to conclude that if he had been formerly convicted of a felony, there was a strong probability that he was guilty of the second offense. The requirements of the law as to the degree and character of proof required to establish the principal offense are not changed and the fact that evidence of the former conviction might create an adverse impression with the jury is not, in view of the requirements of the act, a denial of due process of law.' It is reasonably apparent that the evidence of the prior conviction, properly related only to the matter of punishment, might affect the jury's determination of guilt or innocence.
>
> Likewise, other features of the statute are subject to reasonable criticism. The provision that on the subsequent conviction the maximum penalty be imposed, does not permit any flexibility in adjusting the punishment to the particular violation or allow for any mitigation, however much justified in an individual case. In addition, the maximum penalty may be unduly severe, especially where a life sentence is mandatory, as in the instant case.
>
> In all of these respects our statute follows the form of the earlier habitual criminal acts. Dissatisfaction with their operation has resulted in widespread legislative modification. (See U. Chi. Law Revision Series, No. 1, p. 16ff.) The constitutionality of our statute has, however, been sustained. (*People v. Lawrence*, 390 Ill. 499; *People v. Manning*, 397 Ill. 358; *People v. Kirkrand*, 397 Ill. 588.) Correction of defects in the statute which experience had brought to light is a matter for the General Assembly."

■■ Defendant's second contention is that the failure of the court to give limiting instructions was error. He is correct in this contention, but the record does not show that he offered such an instruction or objected to the instructions given, so the point has not been preserved for review. In any event, the error is harmless since defendant made a judicial confession of his commission of the second burglary.

■■ As to defendant's third contention, while the arguments of the prosecutor here were not altogether temperate, they were partly the result of defendant's constant interruptions of the prosecutor (at that

stage of the trial, defendant was acting *pro se*). In any event, in view of the overwhelming evidence of defendant's guilt, the prosecutor's argument was harmless. *People v. Stahl* (1962), 26 Ill.2d 403, 186 N.E.2d 349.

The judgment of the circuit court of Cook County is affirmed.

We must now deal with an issue which defendant did not raise in this appeal, but which has developed during the pendency of the appeal owing to the enactment of the new Unified Code of Corrections (Ill. Rev. Stat. (1972 Supp.), ch. 38, secs. 1001—1—1 *et seq.*) which became effective on 1 January 1973. (Ill. Rev. Stat. (1972 Supp.), ch. 38, sec. 1008—6—1.) The issue is whether the sentencing provisions of the new Code apply to defendant and, if so, how they shall be applied to his mandatory life sentence imposed under the provisions of the Habitual Criminal Act. To deal with that issue requires the recitation of additional facts which were not relevant to our decision to affirm the judgment of conviction. Those additional facts with the applicable law are as follows.

Defendant was convicted of a first burglary in 1951. On 8 February 1954, having served out his sentence, he was discharged from the Illinois State Penitentiary. On 8 June 1954, defendant committed the instant second burglary. His indictment therefor included the recitation of his first conviction of burglary and thus laid the proper foundation for a sentence, if convicted, under the Habitual Criminal Act. (Ill. Rev. Stat. 1953, ch. 38, sec. 602.) That act did not create a new criminal offense of being an habitual criminal, but was solely a sentencing statute (*People v. Lamphear* (1955), 6 Ill.2d 346, 128 N.E.2d 892) which, in part, mandated the imposition of the maximum sentence then statutorily authorized upon conviction of the second of the specified crimes to which the Act applied. Burglary was one of those specified crimes. After a jury trial, defendant was convicted of the second burglary on 14 October 1954. Acting under the mandate of the Habitual Criminal Act, the trial court imposed the maximum sentence then statutorily authorized for the offense of burglary, namely, life imprisonment in the Illinois State Penitentiary. Ill. Rev. Stat. 1953, ch. 38, sec. 84.

Effective 1 January 1964, the Habitual Criminal Act was specifically repealed. (Ill. Rev. Stat. 1965, ch. 38, sec. 126—1.) Since it was solely a sentencing statute, the sentencing provisions of the Criminal Code of 1961 thereupon became applicable to the offense of burglary. (Ill. Rev. Stat. 1965, ch. 38, sec. 1—7 and specifically sec. 1—7(e).) Under those provisions, the authorized sentence for burglary was an indeterminate sentence, but not less than one year. Ill. Rev. Stat. 1965, ch. 38, sec. 19—1(b).

As noted above, on 1 January 1973, the new Unified Code of Correc-

tions became effective, and repealed sec. 1—7. (Ill. Rev. Stat. (1972 Supp.), ch. 38, sec. 1008—5—1.) Under the companion amendments to the Criminal Code, burglary is a Class 2 felony. (Ill. Rev. Stat. (1972 Supp.), ch. 38, sec. 19—1.) The statutorily authorized maximum term for a Class 2 felony is any term in excess of one year not exceeding 20 years. (Ill. Rev. Stat. (1972 Supp.), ch. 38, sec. 1005—8—1(b)(3).) The minimum term for a Class 2 felony is one year with authority to the court to set a higher minimum term under certain circumstances up to one-third of the maximum term actually imposed. Ill. Rev. Stat. (1972 Supp.), ch. 38, sec. 1005—8—1(c)(3).

This case is before us on a direct appeal from the 1954 conviction of the second burglary. The record shows that:

    (a) on 3 November 1958, defendant filed his application for a Writ of Error;

    (b) the Bill of Exceptions was filed on 2 May 1960;

    (c) on 27 May 1970, the Supreme Court entered its order No. 43219, granting defendant leave to appeal as a poor person, and ordered the preparation of the record. That order was then filed in the circuit court of Cook County on 15 June 1970.

This case, therefore, has not yet been "finally adjudicated". *People v. Harvey* (1973), 53 Ill.2d 585, 294 N.E.2d 269.

■■ Under the new Code of Corrections, where a case has not been "finally adjudicated" on the effective date of the Code, the sentencing provisions of the Code are applicable, if they are more favorable to defendant. (Ill. Rev. Stat. (1972 Supp.), ch. 38, sec. 1008—2—4.) Such is the case here. *People v. Harvey, supra.*

■■ Hence, while we affirm the judgment of conviction, we set aside the life sentence and remand the cause to the circuit court of Cook County with directions to hold a hearing in Aggravation and Mitigation and then to re-sentence defendant in accord with the views herein expressed. The time already served by defendant under his original sentence is, of course, to be credited to defendant under his new sentence.

The hearing in Aggravation and Mitigation is necessary in this case for three reasons:

    (1) Since defendant's life sentence under the Habitual Criminal Act was mandatory, so that no exercise of discretion by the trial court was possible, the record shows that no such hearing was in fact held;

    (2) The Code of Corrections now requires such a hearing (Ill. Rev. Stat. (1972 Supp.) ch. 38, sec. 1005—4—1(a)); and

    (3) The Code of Corrections permits the trial court, in determin-

ing the minimum term of the indeterminate sentence for a class 2 felony, to exceed the minimum statutorily authorized term if in its judgment the circumstances of the case so dictate, subject to a ceiling of one-third of the maximum term actually imposed (Ill. Rev. Stat. (1972 Supp.) ch. 38, sec. 1005—8—1(c)(3)).

Judgment of conviction affirmed. Sentence of life imprisonment set aside, and cause remanded with directions.

STAMOS, P. J., and LEIGHTON, J., concur.