THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CRAIG ALAN WARFEL, Defendant-Appellant.

Fourth District   No. 15044

Opinion filed January 12, 1979.

Richard J. Wilson and Jeff Justice, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

On December 5, 1977, the defendant was charged by information with two counts of aggravated battery in violation of section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(a)), two counts of aggravated battery in violation of section 12—4(b)(8) of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8)), and two counts of battery in violation of section 12—3 of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 12—3). Following jury trial, defendant was found guilty of aggravated battery and battery. Judgment was entered on the verdict for aggravated battery and the defendant was sentenced to 8 years' imprisonment under section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—2).

On appeal, defendant contends (1) that he was not proved guilty of aggravated battery beyond a reasonable doubt, (2) that the trial court abused its discretion in denying defendant's motion *in limine* to exclude his prior conviction for rape as impeachment evidence, (3) that the factors in aggravation of the extended term provisions of section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—3.2) were improperly applied, and (4) that his election to be sentenced under the amended provisions of the Code was not knowing and voluntary.

At trial, Kristan Kodes testified that at approximately 11:30 p.m. on the evening of December 2, 1977, she was walking on the sidewalk on John Street toward Sixth Street in Champaign. She heard someone running behind her but did not look back to see who it was. The running sound was a "heavy thudding sound, like someone was wearing hard-soled shoes or boots * * *." A person grabbed her around the throat from behind, over her right shoulder. After she was thrown to the ground, her assailant slapped her face several times, and then began beating her face on the sidewalk. As she was lying on the ground, she saw two people across the street. The assailant, who apparently also saw the two observers, then ran to a pickup truck parked across the street and drove away. Kodes described her assailant as a male about 6 feet tall who was not "heavy, but he wasn't real skinny, he was real big." He was wearing a dark waist- or thigh-length jacket and had dark hair. Kodes did not otherwise view her attacker sufficiently to identify him later. Kodes described the pickup truck as medium brown in color with a white

camper top. As a result of the attack, Kodes suffered a cut and hemorrhaging near her left eye and bruises on both cheeks.

The two people Kodes observed across the street, Paul Monson and Marie Swanson, came to her aid and took her to a nearby restaurant where the police were called. Monson testified that there was a street light on the southwest corner of the street and that it was "pretty light-fairly light." Monson described the man running from the scene to the pickup truck as a stocky white male, about 5 feet 11 inches tall, wearing dark shoes and having brown, wavy hair. Monson described the pickup truck as a creamy, chocolate brown Chevrolet with a white camper on it that was level with the roof of the truck. The truck had neither front nor back license plates and had silver bumpers. Several hours after the incident, Monson was taken to a parking lot in Champaign by police. There, Monson viewed a pickup truck which he stated was the truck he saw leave the intersection of Sixth and John following the attack. Swanson's testimony was substantially identical to Monson's as to the description of the assailant and the later identification of the truck.

Officer Curtis Watson testified that on the morning of December 3, 1977, at approximately 12:30 a.m., he stopped and arrested the defendant who was driving a brown Chevrolet pickup with a white camper on the back. The stop was based upon a call he received which described an attack upon a girl at the corner of Sixth and John which described the suspect and the suspect's vehicle. The stop occurred approximately 14 blocks from the scene of the incident. The defendant was wearing a waist length, blue plaid jacket, a light colored shirt, jeans, and brown cowboy boots. The officer noted that the defendant had dark wavy hair. The truck was left in a nearby parking lot. Officer Watson later showed this truck to Monson and Swanson who both identified it as the truck they had seen earlier.

The defendant presented no evidence at trial.

The defendant first contends that the only evidence linking him to the offense is the identification of the pickup truck which he was driving when arrested approximately one hour after the incident. Since there was no proof as to the ownership of the truck, defendant maintains that the evidence is not inconsistent with the reasonable hypothesis that someone else had possession of the truck at the time of the incident.

■■ We do not agree. It is clear that identification testimony need not be positive to support a conviction. The weight to be accorded such testimony is a question for the trier of fact to be considered with the other circumstances in the case. (*People v. Pelkola* (1960), 19 Ill. 2d 156, 163, 166 N.E.2d 54, 59.) In the instant case, although none of the witnesses were able to make a positive identification of the defendant, each of the

witnesses consistently described the assailant's build, clothing, and color of hair. All three witnesses were able to describe the truck in which the assailant fled. When the defendant was apprehended one hour after the incident, both he and the truck matched those descriptions given by the witnesses. Furthermore, two of the witnesses made a positive identification of the truck several hours after the offense. The combination of these factors sufficiently establishes the defendant as the assailant beyond a reasonable doubt. Only where the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt, will the jury's determination be disturbed. *People v. Williams* (1968), 40 Ill. 2d 522, 526, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004.

Prior to trial, the defendant filed a motion *in limine* to prevent the State from impeaching the defendant with his prior rape conviction. Following a hearing, the motion was denied. Defendant maintains that the probative value of a prior rape conviction as impeachment evidence is minimal, and that, in any event, the prejudicial effect of the admission of such evidence outweighs its impeachment value. This result, defendant argues, is particularly true where, as here, the present charge is similar to the prior conviction.

■■ It is well established, however, that the admission of a prior conviction for the purpose of affecting a witness' credibility rests within the sound discretion of the trial court. (*People v. Ray* (1973), 54 Ill. 2d 377, 381, 297 N.E.2d 168; *People v. Montgomery* (1971), 47 Ill. 2d 510, 515, 268 N.E.2d 695, 698.) In *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, the specially concurring opinion by Justice Reardon reasoned that the proper interpretation of the rule enunciated in *Montgomery* is that any felony "is presumed to relate to honesty and veracity." (51 Ill. App. 3d 461, 466, 366 N.E.2d 1058.) The specially concurring opinion further stated that a relationship exists between a defendant's previous disrespect for societal order and his veracity as a witness. The view that all felony convictions are presumed relevant to testimonial veracity was later adopted by this court in *People v. Guthrie* (1978), 60 Ill. App. 3d 293, 376 N.E.2d 425, where the court stated:

> "We agree with the views expressed in the specially concurring and dissenting opinions in *Wright* that evidence of convictions and felonies not directly related to dishonesty are not completely lacking in probative value for impeachment. Here, the court carefully weighed the probative value of the prior involuntary manslaughter conviction against its propensity to prejudice the defendant. No error occurred in the denial of the *in limine* motion." 60 Ill. App. 3d 293, 298, 376 N.E.2d 425.

■ In the instant case, after determining that the defendant's prior conviction for rape occurred in 1973, the trial court discussed the provisions of the proposed version of Federal Rule of Evidence 609 adopted in *Montgomery*. The trial court acknowledged that it must exercise discretion in weighing the probative value of the impeachment evidence against potential prejudice. In denying the motion, the court stated that the defendant's prior rape conviction might bear upon his credibility as a witness, and that its probative value outweighed any possible prejudice. Furthermore, the court advised counsel that if the prior conviction was introduced at trial, the jury would be instructed to consider such evidence only for the purpose of affecting defendant's credibility as a witness. We conclude that the trial court did not abuse its discretion in denying defendant's motion *in limine*.

■■ An extended term of imprisonment is authorized under section 5—8—2 of the Code (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—2) where the factors in aggravation set forth in section 5—5—3.2(b) of the Code are found to be present. The latter section provides that the following factors may be considered by the court as reasons to impose an extended term upon any offender who was at least 17 years old on the date the crime was committed:

"(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—3.2(b)(1), (2).)

These factors are stated in the disjunctive, indicating that an extended term may be imposed where either one or both of the aggravating factors are present. Section 5—8—1 of the Code (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—1) provides that the sentence for aggravated battery which is a Class 3 felony shall be not less than 2 nor more than 5 years' imprisonment. Section 5—8—2(a)(5) provides that where a judge finds the aggravating factors of section 5—5—3.2(b) present, he may sentence an offender to not less than 5 nor more than 10 years' imprisonment for a Class 3 felony.

■ Defendant argues that the court misinterpreted the meaning of "wanton cruelty" by defining it as a "reckless indifference or disregard of others' personal integrity." Defendant contends that such an interpretation is improper and would lead to an extended term in every aggravated battery case. In the instant case, however, the testimony

established that Kodes was assaulted without any provocation. She was grabbed by the throat and thrown to the sidewalk where her face was slapped and then beaten against the sidewalk. She sustained a cut, bruises, and hemorrhaging near her eye. The court made explicit reference to these facts in its determination that defendant's behavior was indicative of wanton cruelty. Under section 5—5—4.1 of the Code (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—4.1) there is a rebuttable presumption that the sentence imposed by the trial judge is proper. Regardless of whether the court properly equated "wanton cruelty" with "reckless indifference or disregard of others' personal integrity," we do not find that the trial court abused its discretion in determining that defendant's conduct fell within the purview of "exceptionally brutal or heinous behavior indicative of wanton cruelty" as contemplated by section 5—5—3.2(b)(2). The imposition of a sentence is a matter of judicial discretion, and, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.

At the sentencing hearing, the trial court explained to the defendant his right to elect to be sentenced under the law in effect on the date of the occurrence (December 2, 1977), or to be sentenced under the law in effect at the time of the sentencing hearing (May 18, 1978). After explaining the old provisions, the new sentencing provisions were explained as follows:

"THE COURT: All right. Under the law in effect at this time, the person—a person convicted of a Class III felony could be sentenced to a flat term, or a stated number of years, ranging between three years, or rather—rather ranging between two years, at the least, and five years, at the most, or any time in between that. In addition, the State could ask for a—an—an enhanced penalty of up to double the five years, or ten years. May I ask at this time that the State is—would you—would elect—would elect to do that?

MR. LAZZARO: Your Honor, we would.

\* \* \*

THE COURT: Well, in that event, the State could—could ask that a term of up to ten years be imposed, with a two years at the least and ten years at the most."

The trial court failed to explain, however, that if the court found the aggravating factors of section 5—5—3.2(b) to be present, the minimum determinate sentence becomes 5 years. Defendant contends that he was deprived of a knowing election between the old and new sentencing provisions because the court left him with the impression that even under the extended term sentence he could receive a sentence of 5 years.

Where a defendant has not been sentenced before February 1, 1978,

section 8—2—4(b) of the Code (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b)) accords a defendant the right to elect to be sentenced under the law as it existed at the time of the offense or under the amended provisions of the Code that became effective February 1. Although as a practical matter, a trial judge may feel obligated to explain the old and new provisions prior to defendant's election, neither the statute nor any Supreme Court Rule requires that specific admonitions by the court be given or that the election be knowing and intelligent. We note that the purpose of Supreme Court Rules 401 and 402 (58 Ill. 2d R. 401, 402) is to assure a knowing and intelligent waiver of counsel or indictment or the entry of a guilty plea because in each instance the defendant is waiving constitutional rights. An analogy to those rules cannot be made in the present situation since no waiver of constitutional rights is involved in making a sentencing election. Accordingly, all that is required under section 8—2—4(b) is that the trial judge advise a defendant of his right to election. The burden is not for the court but for counsel to explain and suggest what appears to be the best choice.

■■ The record in the instant case reflects that the defendant had discussed the election with his attorney on several occasions. The defendant does not contend that he was inadequately counseled by his attorney or that he would have elected differently had such an admonition been expressly given. Furthermore, defendant's determinate sentence of 8 years' imprisonment was within the statutory maximum range which the court discussed with the defendant. Consequently, we conclude that no error has occurred in defendant's election.

■■ We note that in his reply brief, defendant for the first time on appeal challenges the constitutionality of section 5—5—3.2(b) of the Code as a denial of equal protection. This issue was not addressed by the State in its brief. Since Supreme Court Rule 341(g) (58 Ill. 2d R. 341(g)) mandates that the reply brief must be confined strictly to argument presented in the brief of the appellee, we do not reach this issue.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.