THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS BUTLER, Defendant-Appellant.

Fifth District   No. 79-92

Opinion filed November 16, 1979.

John H. Reid and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant pleaded guilty to armed robbery and was sentenced to 60 years' imprisonment. He appeals, contending (1) that the information filed should have charged him with extended-term armed robbery, (2) the trial court erroneously applied the extended-arm statute, and (3) the sentence was excessive. We affirm.

Defendant was charged by information on February 3, 1978, and by amended information on April 12, 1978, with armed robbery and other offenses. On March 3, 1978, defendant initially entered his plea of not guilty and requested a jury trial. But pursuant to a plea negotiation, he subsequently entered a plea of guilty to the armed robbery charge alone. At that plea proceeding on May 23, 1978, the trial court gave the Supreme Court Rule 402 admonitions, explained the charge and outlined the

penalty alternatives, including mandatory supervised release and extended sentencing terms. The State presented the factual basis for the charge, which included the use of a pistol, all of which defendant acknowledged. The trial court found that defendant knowingly and understandingly waived his right to a jury trial and entered a plea of guilty which was accepted by the court. A presentence report was ordered.

The report showed defendant to be 62 years of age with a long criminal record dating back to 1932. That record reflects the following: A conviction for burglary and theft in 1932, with a sentence of one year to life; release on parole in 1934; reincarceration four times for parole violations; conviction of two counts of robbery in 1944, with a sentence of five years to life; a parole violation in 1948; convictions for burglary, theft and kidnapping in 1951, with a sentence of 5 years to life; twice reincarcerated for parole violations; conviction for escape in 1961, with a sentence of six months; a conviction for burglary and theft in 1962, with a sentence of 10 years to life; reincarcerated for parole violation for 10 years to life; a conviction for armed robbery in 1972, with a sentence of 8 to 30 years; and on parole for the last offense at the time of the armed robbery in question. Based on this record the State, at the June 19, 1978, sentencing hearing, argued for the maximum 60-year sentence under the extended-term statute. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a)(2).) The defendant presented two witnesses in mitigation who testified to the effect that he was remorseful, had recently acknowledged his problem with alcohol, and should be given a sentence that offered some hope for eventual release. The trial court held that the 1972 armed robbery conviction made defendant eligible for an extended term, and in light of his lengthy record, defendant was sentenced to 60 years' imprisonment.

A motion to withdraw the plea of guilty and vacate the judgment was filed, and later amended, alleging that the sentence imposed was excessive and the extended-term statute was erroneously applied. The trial court denied the motion and defendant appeals.

Appellant first contends that the amended information charging him with armed robbery failed to set forth the necessary factors in aggravation, i.e., the 1972 armed robbery conviction, under which the court could sentence him to an extended prison term and that, therefore, the sentence imposed must be vacated. Those factors in aggravation which can be considered by the trial court are as follows:

> "(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b).)

If those factors are found to exist, the extended-term statute then becomes operative at the discretion of the trial court, to-wit:

"(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:

\* \* \*

(2) for a Class X felony, a term shall be not less than 30 years and not more than 60 years." Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a).

■■■ The aggravating factors by the terms of the statutes themselves are relevant only in regard to sentencing. They are not necessary elements proof of which is required to find appellant guilty of the crime in the first place. He was charged and convicted under section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a)), the elements of which are taking property from the person or presence of another by the use of force or by threatening the imminent use of force while carrying or otherwise armed with a dangerous weapon. That statute under subparagraph (b) states that the sentence to be imposed for armed robbery shall be in accordance with Class X felonies. And under section 5—8—2(a) and section 5—5—3.2(b)(1), any prior conviction for the same or greater class felony is only a basis to impose an extended-term *sentence*. Appellant was not charged with, nor could he be, extended-term armed robbery. No such offense exists. He was charged with armed robbery. The extended-term statute is operative only at the sentencing level, and not at the indictment level.

Appellant cites the Illinois Supreme Court cases of *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499, and *People v. Booker* (1966), 34 Ill. 2d 16, 213 N.E.2d 542, *cert. denied* (1967), 386 U.S. 929, 17 L. Ed. 2d 800, 87 S. Ct. 872, for the proposition that since his 1972 armed robbery conviction raised the possibility of increased punishment, it was an element of the present offense which needed to be alleged in the information. *Ostrand* does not come close to appellant's hypothesis. There the defendant was charged in a separate count of an indictment with a prior felony because he was being prosecuted under a statute which made carrying a concealed weapon by one with a previous felony

conviction a felony rather than a misdemeanor. The court there was correct in holding that the prior conviction had to be alleged in the indictment "in order to prove defendant's commission of the felony of carrying a concealed weapon." (35 Ill. 2d 520, 529.) The statute mandated such an allegation in order to prove the charge. Such is not the case here. Appellant's 1972 armed robbery conviction was not a necessary allegation or element to be proved in order to convict him of the armed robbery here at issue. As noted above, only after it was determined that he was guilty of the present offense was his prior conviction relevant. And it was relevant only with respect to the sentence he received, and not his guilt or innocence in the first place.

*Booker* involved a habitual criminal statute which *mandated* increased punishment if the defendant was twice or more convicted of any of a number of certain crimes. Such sentencing if a second conviction was found was not discretionary with the trial court, as in the present case, but mandatory. It is true, as appellant points out, that "the Habitual Criminal Act did not create a new crime requiring a separate indictment but, to the contrary, merely increased the punishment for subsequent offenses, and placed the burden upon the State to charge and prove the prior conviction as a part of the subsequent trial." (34 Ill. 2d 16, 19.) But appellant herein neglects to realize the importance of the sentence following the above quote: "Such proof thereby became *an issue* in the case, just as motive or intent ° ° °." (Emphasis added.) (34 Ill. 2d 16, 19.) The reason it was at issue was because the habitual criminal act required that "such former conviction, or convictions, and judgment or judgments *shall be set forth* in apt words in the indictment." (Emphasis added.) (Ill. Rev. Stat. 1955, ch. 38, par. 602.) Although not a separate crime, the prior conviction was in controversy in a cause tried under the habitual criminal act because of legislative mandate. However, no such legislative directive exists here.

That this interpretation is correct is borne out by the fact that the *Booker* court relied on *People v. Lamphear* (1955), 6 Ill. 2d 346, 128 N.E.2d 892, a case cited by appellant. There the court acknowledged that the habitual criminal act did not create a new crime, but "[r]ather , the statute fixes a *mandatory* punishment for the subsequent crimes of which defendant may be found guilty. Moreover, in directing that the former conviction be set forth in apt words in *the* [*sic*] indictment, the legislature showed it intended the fact of the prior conviction to be alleged in the indictment for which it is sought to administer the enhanced punishment." (Emphasis added.) (6 Ill. 2d 346, 350.) Thus it can be seen that neither *Ostrand* nor *Booker* stand for the general proposition that just because the potential for enhanced punishment exists, therefore such factor must be alleged in the indictment. On the contrary, those cases stand for the

doctrine that when a statute mandates allegation and proof of a specific item, the State must so act.

Such is not the case here. While appellant argues that a prior conviction within the same or greater class felony must be alleged before an extended term can be imposed, it is clear that no such requirement exists in the statute. All of the aforesaid sections are encompassed within chapter V of the amended Unified Code of Corrections, entitled "Sentencing," and not title III of the revised Criminal Code of 1961, entitled "Specific Offenses." Furthermore, this is not a case of mandatory increased punishment as in *Booker* and *Lamphear*. Rather, the extended-term statute only gives the trial court discretion to sentence thereunder: "Where the judge finds that such factors were present, he *may sentence* an offender to the following [extended term]." (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a).) Such discretionary matters need not be charged in an information.

Moreover, while the legislature does not require the allegation of a prior conviction in the information, it does by its own terms mandate the warning with which appellant herein is concerned.

"If the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility. If it does not so appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(b).)

Noteworthy, then, is the fact that appellant already received what he is now asking for. He acknowledges that he was admonished concerning the possibility of an extended prison term during the plea proceeding, and prior to his entering a plea of guilty. The trial court therefore complied with the statute. Appellant was given the same warning which he now contends should have been placed in the information, and there was no error in the procedure followed.

Appellant next contends that he could not be sentenced under the extended-term statute because he was not convicted of "the same or greater class felony, within 10 years," as required by section 5—5—3.2(b)(1). As appellant notes, armed robbery was a class 1 felony in 1972 when he was previously convicted of this offense. However, effective February 1, 1978, armed robbery became a class X felony, and that is the class felony of which appellant was previously convicted. Nothing in section 5—5—3.2(b)(1) expressly indicates at what point in time the determination of the prior class felony is to be made. No Illinois case has come to our attention which has directly addressed this issue. Appellant argues that such determination is to be made at the time of each

individual conviction, while the State counters that this resolution should be based on the class schedule operative on the effective date of the Revised Code of Corrections, February 1, 1978. We find that a review of the Criminal Code of 1961, as amended by Public Act 80-1099, effective February 1, 1978, and particularly the amended Unified Code of Corrections, compels us to conclude that the legislature adopted the position suggested by the State.

We are here faced with two convictions for the same crime, armed robbery, both based on the same statutory elements, with the only difference being a time separation of six years. Effective February 1, 1978, armed robbery as well as numerous other offenses were reclassified as Class X felonies with determinate, rather than indeterminate, sentences. Hence, the lapse of time between appellant's two convictions has only affected the possible sentences and not the requisite substantive components of the offense of armed robbery.

But beyond the initial conviction, the legislature envisioned additional sentences for repeat offenders. Based on the apparent shift in emphasis from rehabilitation to punishment as the controlling consideration in sentencing, the legislature adopted the extended-term statute, still premised on determinate sentences, but in accordance with its mandate toward "practices and procedures as will promote a uniformity and parity of sentences * * *." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.2.) The extended-term statute was designed to impose; in the trial court's discretion, a more severe penalty for an offender who repeats a felonious act "of the same or greater class" than his previous offense and conviction. Yet, this was still to be accomplished by a determinate sentence in order to equalize sentences imposed on recidivists for given crimes and classes of crimes.

Therefore, if the equalization concept was to have any real effect as envisioned and constructed by the legislature, then an extended term had to be available against one who committed the exact same crime twice within the 10-year limitation period. The same crime is encompassed in "the same * * * class felony" restriction of section 5—5—3.2(b)(1) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1)), or else the extended-term statute is ineffectual with respect to the problem it was designed to immediately deal with, repetition of the same or worse crimes. If this were not true, appellant could not have received a sentence greater than for an initial armed robbery conviction under the amended Unified Code of Corrections, and the extended-term statute would serve no rational legislative purpose. We do not see the legislative alteration of the classification and punishment for the crime of armed robbery as pivotal in this case, for appellant was charged with the Class X felony of armed robbery, was admonished about the possible extended-term

sentence, and therefore had knowledge of the substance of and potential punishment for the alleged crime prior to his voluntarily and understandingly entering his plea of guilty thereto. What is crucial in our view, however, is appellant's prior conviction for that same offense. For appellant to argue that an individual convicted in 1972 of armed robbery can now defy both the legislature and the courts by arguing that he really committed a different crime, because the classification names were distinctive, and that he should not be treated as a repeat offender for purposes of sentencing, simply because the sentences for the same crime differed at two relative points in time, is patently absurd as form over substance and contrary to the wording and intent of the legislature.

We are persuaded as to the correctness of this application because the legislature set forth no time strictures in the extended-term scheme. Section 5—8—2(a) simply states that no extended term shall be imposed unless the aggravating factors of section 1005—5—3.2(b) are found to exist. And the latter section specifies no point in time when the aggravating factors of "the same or greater class felony" should be determined to exist. However, in other sections of the Unified Code of Corrections, where the legislature deemed it proper to impose limitations on sentencing, it explicitly did so. Section 5—5—3(c)(6) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3(c)(6)) states:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 1 or Class 2 felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second."

Similarly, the habitual criminal act, which establishes mandatory life sentences, contains such limiting language. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33B—1.) It is clear from this last statute, as well as the former, that "the prior convictions must have occurred in Illinois subsequent to the effective date of the new law. Therefore, it is unlikely that this provision will be utilized for several years." (Aspen, *New Class X Sentencing Law: An Analysis*, 66 Ill. B. J. 344, 349 (1978).) Yet, no such limitations are apparent in the extended-term system, and we decline appellant's invitation to adopt them on behalf of the legislature.

■■ Appellant contends that this interpretation violates the principles of statutory construction such that we are, in effect, rewriting the statute. Some of the canons of statutory interpretation, as noted by appellant,

were aptly set forth in *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 369, 357 N.E.2d 1180:

> "Where the meaning of a statute is in dispute, the threshold task of a court is to examine the terms of the statute itself. * * * 'The cardinal rule of all statutory construction, to which other rules are subordinate, is that the true intent and meaning of the legislature must be ascertained and given effect. [Citation.] The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted.' "

But as recognized by the *Gibson* court, the statute is not to be construed in a vacuum, but in conjunction with other related sections. Therefore, other principles of statutory construction dictate that "the reason for the new law and the evil to be remedied, as well as the objectives and purposes of the statute * * *" may be considered. (*People v. Choate* (1979), 71 Ill. App. 3d 267, 273, 389 N.E.2d 670.) Only if it becomes obvious after such review that the statute is ambiguous does the age-old declaration that "the interpretation most favorable to the accused shall be adopted" become operative. (*People v. Lund* (1943), 382 Ill. 213, 215-16, 46 N.E.2d 929.) However, we find no such ambiguity or inconsistency here, and based on the foregoing analysis, we conclude that the trial court did not err in resolving that the appellant's 1972 armed robbery conviction was one of the same class felony and sufficient to invoke the extended-term statute.

■■ ■ Appellant further argues that both section 1005—5—3.2(b) aggravating factors must be present before the extended-term statute applies. To reach that conclusion, he focuses on the language of the extended term statute, section 5—8—2(a) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a)), to the effect that "unless the *factors* in aggravation" are found to exist, an extended term cannot be imposed. (Emphasis added.) However, section 5—5—3.2(b) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)) adopts that plural form in stating that "the following *factors* may be considered by the court as reasons to impose an extended term sentence * * *," but goes on to list those considerations by using the disjunctive "or." (Emphasis added.) This district recently ruled in *People v. Lewis* (1979), 75 Ill. App. 3d 1009, 394 N.E.2d 90, in compliance with *People v. Vraniak* (1955), 5 Ill. 2d 384, 125 N.E.2d 513, *cert. denied* (1955), 349 U.S. 963, 99 L. Ed. 1285, 75 S. Ct. 895, that the word "or" connotes statutory alternatives which are to be considered separately. Clearly, section 5—5—3.2(b) permits a finding that either a prior conviction of the same class felony *or* exceptionally heinous behavior is sufficient to support an extended sentence. The Fourth Appellate District has also followed this interpretation. (*People v. Warfel* (1979), 67 Ill. App. 3d 620, 625, 385 N.E.2d 175.) Therefore, the trial

court's singular finding that appellant was convicted within 10 years of sentencing of the same class felony was sufficient for an extended-term sentence to be imposed. There was no error.

Appellant finally contends that the 60-year sentence he received was excessive and a clear abuse of discretion and requests this court to reduce his sentence to 20 years. He argues that under the 60-year term he will have to serve a minimum of 30 years before becoming eligible for release, that he will be 91 years of age at that time, and that therefore his sentence was the equivalent of a life sentence. If the requested 20-year term were imposed, he would be eligible for release at age 71. We decline to modify and reduce the sentence.

Appellant argues that he received life imprisonment, and maintains that the only statutory authority for sentencing him to life imprisonment for armed robbery is the habitual criminal statute (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33B—1). That statute, of course, imposes a mandatory life sentence on those who qualify under its provisions. That statute is clearly not the basis for appellant's sentence.

■■ The suggestion that appellant was sentenced to life simply because of his age is also without merit. He received a sentence of 60 years imprisonment, not life. What appellant contends, in effect, is that his age is such a predominant mitigating factor that his sentence should be reduced. While the Illinois Supreme Court authorized the consideration of age as one mitigating factor in *People v. Adkins* (168), 41 Ill. 2d 297, 301, 242 N.E.2d 258, it is only one factor to be considered. All factors in mitigation are to be considered simultaneously, not each independent of or to the exclusion of the others. (See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.1.) In appellant's case, age appears to be more of an aggravating factor than a mitigating one. As the State correctly notes, it would be difficult to amass a more exhaustive criminal record than appellant's without living a long time. Contrary to his position, appellant's constant pursuit of criminal activity shows that his age is no barrier to recidivist criminality. That being the case, we disagree that appellant's age is cause to reduce his sentence, and we refuse to do so.

Appellant further surmises that if he had murdered the victim rather than subjected him to armed robbery, the maximum sentence he could have received for the murder would have been less than that received below. Yet, we note that this implied equal protection argument is raised for the first time on appeal and it has, therefore, been waived. *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.

Appellant suggests that if we consider certain factors, we must conclude that the sentence was excessive. We have already disposed of his age theory. It is impressed upon us that appellant's penitent attitude and problem with alcohol, which were raised via the testimony of two

witnesses on his behalf at the sentencing hearing, are factors to be reckoned with. We note first of all that the trial court expressly considered these factors in passing sentence:

"The two witnesses who did appear were observed and their testimony is considered. * * * We have had some remarks tending to indicate that Mr. Butler was, at last, getting the grasp of helping other people and getting the grasp of doing a job [ambulance driver] that seemed to be sort of upbuilding in his character and outlook upon life . . . But it so happens that this Armed Robbery was committed at the end of that process. * * * [I]t doesn't seem to follow that that sort of way of life or that pattern of thinking to all at once get ahold of yourself and be going along for a period of time, and everything's going fine, and you're recognizing your need in society and recognizing that you have a place in society and then all at once you commit armed robbery."

Also, we note that appellant's alcohol problem was never really propounded as the cause of this act, other than appellant's statement in a letter to the trial court stating: "That all of my present and past misery has been the result of three small, but deadly, words: Too much booze." This does not persuade us that the trial court erred in imposing the sentence it did.

Appellant argues that the "non-violent nature of the offense" and "his goal of rehabilitating himself while in prison" should not be disregarded. Yet, it is clear that appellant used a pistol during the armed robbery, and threatened imminent harm upon the victim. This was a proper factor in aggravation under section 5—5—3.2(a)(1) to be considered by the court, and it does not mitigate favorably toward reducing appellant's sentence. Likewise, appellant does not seriously contend that his sentence should be reduced because of his ambition toward rehabilitation. In light of his previous criminal record, we can but repeat the accurate expressions of the trial court:

"Now this defendant is not new in the Court Room, apparently. He has been there multiple times and before multiple hearing officers or Judges, with respect to parole violations. He knows what a hearing is. * * * There seems to be no other route that this Court can take under the law. His history of criminal activity is rather robust. It is not too complimentary. * * * I'm sure he is aware of that.

* * *

I certainly do not like to be a person who takes away from any person the hope that we might have better things in the future. It's bad, I presume, to have to take away from a person the hope of immediate release from Prison. But, from what is before this

Court, we have a man who apparrently [sic] is endowed with much intelligence; who has great ability; but, he also is endowed with a bent in his personality and character that causes him not to be considerate of those who have. Perhaps it is the have and have not. It is compelling upon this Court that to prevent this man, if it's possible, from ever committing another armed robbery. And I can't argue with the parole authorities, who have released this man to society; but, apparrently [sic], he was released at a time when he was not ready. Our society does not need to be hammered at by people who use deadly weapons * * *. It's the opinion of this Court, with the history that this defendant has and I'm not unmindful that I'm sending an individual to Prison, an individual who is maybe to a certain extent, going to waste away his talent. It's a waste. It's a waste, but it occurs everytime anybody commits a crime, something is wasted. It is the opinion of this Court that this extended term should apply, if ever it should apply I think it should apply in this case. * * * [S]o I am going to sentence you, Mr. Butler, for sixty years to The Department of Corrections. * * * [A]s far as this Court's concerned I think you should be away from society and that's where you're going."

Based on the circumstances of this case and a review of the entire record, we do not believe that the sentence imposed was an abuse of the trial court's discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) Nor do we believe that appellant has made the necessary affirmative showing that the sentence was erroneous in his particular situation. (*People v. Choate*, 71 Ill. App. 3d 267, 274.) On the contrary, we can only conclude that appellant's intense criminal temperament called for the strong and swift disposition imposed by the trial court.

For all the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Judgment affirmed.

JONES, P. J., and KASSERMAN, J., concur.