THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LINDSEY HAIRSTON, Defendant-Appellant.

Third District   No. 79-301

Opinion filed July 22, 1980.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Following a jury trial the defendant, Lindsey Hairston, was found guilty of burglary, criminal damage to property and unlawful possession of a hypodermic syringe. He was sentenced to an extended term of imprisonment of 10 years.

On appeal the defendant raises the following issues: whether the defendant's rights under the United States and Illinois constitutions were violated where the prosecutor elicited testimony from a State witness regarding the defendant's post-arrest silence; whether the court was barred from imposing an extended-term sentence where the defendant's prior conviction was neither alleged in the information nor proved at trial; whether both factors listed in the extended-term sentencing provision need be present before an extended-term sentence is imposed (see Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1) and (2)); whether the present case should be remanded to the trial court for imposition of sentences upon the defendant's criminal-damage-to-property and unlawful-possession-of-a-hypodermic-syringe convictions.

The resolution of these issues does not require a detailed recitation of the facts in this case. For the purposes of determining this appeal it is sufficient to note the following. The evidence placing the defendant at the scene of the crime was circumstantial and included the testimony of Laura Briscoe, who lived in a second-floor apartment above the burglarized offices of the Kankakee County housing authority. Ms. Briscoe testified that she was awakened about 3:20 a.m. on the morning of October 1, 1978, by a noise outside her window. She observed an individual outside the building wearing a brightly colored sweater such as the defendant was wearing when apprehended. Upon hearing further noises she notified an individual named Freddie, who lived in the housing authority office, that someone was breaking into the office.

Michael Furrow, a Kankakee city police officer, testified that he responded to a burglary call received at approximately 3:55 a.m. on October 1, 1978. Upon receiving the call, he proceeded to the North Dearborn Street address of the housing authority office, where he observed the defendant running down the street. Furrow recognized the defendant, whom he had known for 12 or 13 years. After pursuing the defendant with the aid of another squad car, Officer Furrow apprehended him in a grassy area nearby. While handcuffing the defendant, Officer Furrow noticed that the defendant's hands were cut and bleeding.

During the booking procedure at the station following the defendant's arrest, Officer Furrow found a hypodermic syringe in the defendant's pants pocket. The defendant was charged with and found guilty of the unlawful possession of a hypodermic syringe.

Officer Charles Mathes of the Kankakee city police department secured the burglary scene. He found two street level windows broken and the screens for those windows twisted and torn. Inside the housing authority offices five rooms and four doors were ransacked and damaged. Blood was found on the floor and on some broken glass. It was impossible to determine with complete accuracy whether the blood found at the scene was the same type as that of the defendant or whether the fingerprints lifted from the scene were those of the defendant. Glass particles were found in the defendant's sneakers. However, a forensic scientist testified that it was common to find glass fragments on sneakers and that the glass tested was very common, though it did have a similar refractive index to the glass fragments taken from the broken windows in the housing authority office.

Based on the circumstantial evidence presented by the State, the jury returned guilty verdicts against the defendant as to all three charges against him. The defendant presented no evidence on his behalf.

During the trial the following exchange took place during the State's questioning of Officer Furrow:

"Redirect Examination

[Mr. Power, State's Attorney: When Mr. Hairston was being booked at the Station you say you found a syringe on him?

A. Yes, sir.

Q. At this time had Mr. Hairston been given his Miranda warnings?

[Mr. Smietanski, Assistant Public Defender]: Objection. Beyond the scope.

THE COURT: Sustained.

[STATE'S ATTORNEY]: Then may I move to reopen Direct?

[ASSISTANT PUBLIC DEFENDER]: Object to the procedure, Judge. There is no showing of any need for it.

THE COURT: Reopen your case on Direct.

Direct Examination (Reopened)

[STATE'S ATTORNEY]: Calling your attention, Officer Furrow, at the station when Mr. Hairston was being booked you say you found a syringe on him, correct?

A. Yes.

Q. All right. At the time it was found had he been given the Miranda warnings?

A. Yes, sir.

[ASSISTANT PUBLIC DEFENDER]: Objection. Irrelevant.

THE COURT: Overruled in this regard.

A. Yes, sir, he had been.

Q. Did Mr. Hairston at this time make any statement or comment at the time you found the syringe upon him?

A. No, sir.

[STATE'S ATTORNEY]: No more questions.

[ASSISTANT PUBLIC DEFENDER]: I have no questions, Judge."

Based on this exchange, the defendant contends that his right to a fair trial was infringed because the prosecutor elicited testimony from a State's witness which allegedly reflected upon the defendant's post-arrest silence following the giving of *Miranda* warnings. It is the State's position that the testimony elicited did not reflect upon the defendant's post-arrest silence such as would constitute a violation of his fifth and fourteenth amendment rights. In the alternative, the State contends that any error committed by the State's attorney in eliciting testimony from a State's witness dealing directly with the defendant's post-arrest silence was harmless beyond a reasonable doubt.

● 1 It is an established principle that the use of an accused's silence at the time of his arrest and after he has received *Miranda* warnings violates the self-incrimination clause of the fifth amendment and the due process clause of the fourteenth amendment to the United States Constitution. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133; *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) As the court in *Doyle* stated:

"Silence in the wake of these [*Miranda*] warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." (*Doyle v. Ohio* (1976), 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244.)

For this reason the *Doyle* court found that it would be fundamentally unfair and a deprivation of due process to allow an arrested person's silence to be used to impeach an explanation subsequently offered at trial. In *Doyle* the defendants gave an exculpatory story that they had been framed for the first time at trial and the prosecutor, on cross-examination, elicited testimony from them concerning their post-arrest silence. The eliciting of this testimony was held to be reversible error.

The State seeks to distinguish *Doyle* from the case at bar on the grounds that the alleged improper testimony did not come from the

defendant but from a State's witness and because the question asked by the prosecutor was not designed to elicit any comment regarding the defendant's post-arrest silence but instead was meant to pinpoint the exact time frame in which the witness-police officer was dealing. The State contends such purposes differentiate the prosecutor's question from the type proscribed in *Doyle*. Although the question asked in the present case differs both in context and intensity from the series of questions regarding the defendant's post-arrest silence asked in *Doyle*, we cannot say that the defendant's constitutional rights, in the present case, were not violated within the meaning of *Doyle*.

Long before the United States Supreme Court held, in *Miranda*, that defendants have a right to remain silent in the face of police interrogation, the Illinois Supreme Court held it was error for the State to offer testimony as to the defendant's refusal to make a statement. In *People v. Rothe* (1934), 358 Ill. 52, 57, 192 N.E. 777, 779, testimony was offered, as in the present case, by an officer involved in the defendant's arrest. As clarification for its reversal, the *Rothe* court stated that an accused is within his rights when he refuses to make a statement, and the fact that he exercised such right has no tendency to prove or disprove the charge against him, thus making evidence of his refusal neither material or relevant to the issue being tried. (358 Ill. 52, 57, 192 N.E. 777, 779.) This rule was affirmed in *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39. After discussing the impact of *Miranda, Hale,* and *Doyle,* our supreme court stated: "*Doyle* thus goes beyond the evidentiary test of *Hale* and establishes a *per se* constitutional bar to the use of silence." (74 Ill. 2d 435, 440, 386 N.E.2d 39, 41.) Later Illinois cases have adhered to the same principle. (*People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632; *People v. Owens* (1975), 32 Ill. App. 3d 893, 337 N.E.2d 60; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.) Furthermore, *Deberry, Owens,* and *Wright* represent situations like that in the case at bar, in which the proscribed testimony regarding a defendant's post-arrest silence was elicited from State witnesses and the defendant did not testify or present any evidence. See also *People v. Hockaday* (1979), 69 Ill. App. 3d 294, 387 N.E.2d 409; *People v. McDowell* (1972), 4 Ill. App. 3d 382, 280 N.E.2d 471.

■■ Because we have decided that the testimony elicited from Officer Furrow in the present case violated the defendant's constitutional rights, our next inquiry must be the effect of this violation upon the defendant's right to a fair trial. The courts of this State have indicated that a violation of the *Doyle* principle may amount to nothing more than harmless error. (See *People v. Rush* (1978), 65 Ill. App. 3d 596, 382 N.E.2d 630.) The standard to be applied in evaluating the effect of such a constitutional error is whether a reviewing court can say that the error was harmless

beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) In deciding whether an error is harmless, the question presented is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. (*Chapman v. California* (1967), 386 U.S. 18, 22-23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827; *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.) If the evidence of guilt is "overwhelming" the error will be held to be harmless beyond a reasonable doubt. *People v. Buckley* (1976), 41 Ill. App. 3d 989, 355 N.E.2d 207.

We find the evidence against the defendant in the case at bar overwhelming. The defendant was charged with burglary, criminal damage to property, and unlawful possession of a hypodermic syringe. His possession of the syringe alone presented a *prima facie* case of a violation of the statute making unlawful possession of a hypodermic syringe a crime. (Ill. Rev. Stat. 1977, ch. 38, par. 22—50.) In addition, the facts proved that the defendant had knowledge of the presence of the syringe and was in immediate and exclusive control of it, as required by statute.

■■ The evidence against the defendant on the burglary and criminal damage to property charges, although circumstantial, was conclusive. Officer Furrow, who knew the defendant, spotted him just 2½ window lengths away from the broken windows in the housing authority offices within five minutes after the time that the witness Briscoe testified she first heard sounds outside her window which awakened her. In addition, the defendant's hands were cut and bleeding when apprehended, and his clothing was identified by Ms. Briscoe as that worn by the perpetrator of the crime.

Our evaluation of this evidence, together with an examination of the error, as viewed in the context of the entire record of proceedings, convinces us that this error was harmless beyond a reasonable doubt and does not require reversal of the defendant's conviction.

■■ The defendant next questions the imposition of an extended-term sentence of 10 years' imprisonment on two grounds: whether the court was barred from imposing an extended-term sentence where the defendant's prior conviction was neither alleged in the information nor proved at trial; and whether both aggravating factors in the extended-term sentencing provision (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1) and (2)) need be present before an extended term can be imposed. Both of these questions have been raised repeatedly in the reviewing courts of this State, and both have been answered contrary to the defendant's position. It has been well established that where, as in the present case, the prior conviction does not change the grade or degree of an offense, but merely enhances the penalty for the offense, the prior

offense need not be pleaded or proved at trial to support imposition of an extended-term sentence. (*People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718; *People v. Gray* (1979), 80 Ill. App. 3d 213, 399 N.E.2d 206; *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374; *People v. De Groot* (1969), 108 Ill. App. 2d 1, 247 N.E.2d 177.) Thus, the fact that the defendant's prior conviction was neither contained in the information nor proved at trial does not preclude the imposition of an extended-term sentence in the present case.

Likewise, the question of whether both aggravating factors listed in the extended-term sentencing statute must be present before the extended-term statute applies has been addressed by the reviewing courts of this State and answered in the negative. (*People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718; *People v. Gray* (1979), 80 Ill. App. 3d 213, 399 N.E.2d 206; *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374.) For this reason, the defendant's contention that an extended-term sentence should not have been applied in the case at bar because both aggravating factors were not found to be present is untenable.

■■ Lastly, the defendant argues that his "so-called convictions" for criminal damage to property and possession of a hypodermic syringe should be vacated by this court because each of the convictions is a nullity due to the lack of a sentence. The defendant's argument is without merit. As this court stated recently in *People v. Wilkins* (1980), 83 Ill. App. 3d 41, 44, 403 N.E.2d 799, 802, "[w]here a trial court fails to pronounce a sentence on one of a number of convictions, the judgment is not rendered a nullity." Instead, the cause should be remanded for the imposition of a sentence on the findings of guilty of criminal damage to property and unlawful possession of a hypodermic syringe since the judgments of conviction for which no sentences were imposed would not otherwise be final. See *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.

In the present case, in rendering the sentence the trial court refers to a single, extended-term sentence of 10 years' imprisonment. Because such a sentence would have been improper for either the criminal-damage-to-property or unlawful-possession-of-a-hypodermic-syringe convictions, we must infer that the sentence was imposed only on the burglary conviction.

Accordingly, while the judgment of the circuit court of Kankakee County is affirmed, the cause is remanded for the imposition of sentences on the criminal-damage-to-property and unlawful-possession-of-a-hypo-dermic-syringe convictions.

Affirmed and remanded.

ALLOY, P. J., and STENGEL, J., concur.