THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH MILLER *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 79-691, 79-692 cons.

Opinion filed November 13, 1980.

Ralph Ruebner and Fe Fernandez, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Alfred L. Petrocelli, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendants Joseph Miller and Michael Jones, were each convicted of two counts of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) and one count of theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)). Defendant Jones was sentenced to an extended term of 10 years in the Department of Corrections, and defendant Miller was sentenced to a term of 1 to 3 years. The defendants have appealed, contending that they were denied the effective assistance of counsel, and defendant Jones further appeals his sentence, contending that it was improperly imposed. We affirm.

The defendants were charged by information with the offense of burglary. Prior to trial the State was granted leave to amend the information to include an additional count of burglary and one count of theft of property over $150. No objection was raised by the defense, and offers of reswearing and reexecution of the information were waived. On the following day, the court denied a defense motion to strike the amendments which was made by a different assistant public defender representing the defendants.

Trial commenced, and Shirley Cotton Hubbard was called as the first witness. She testified that at about 7:30 a.m. on March 14, 1978, she left the apartment which she shared with Robert Hubbard at 7922 South Marshfield in Chicago, Illinois, to go to work. She received a telephone call about 3 p.m. that afternoon and returned to her apartment, where she noted that the glass in the rear door was broken and two television sets were missing.

Julius Davis, a 15-year-old high school student, testified that he lived across the street from the Hubbards, and on the morning of March 14, 1978, he saw the defendants carrying two television sets from the Hubbard apartment. He stated that defendants walked through the gangway and across the alley to James Hubbard's residence at 7919 South Paulina Street, where they placed the television sets in front of the back door. As the defendants walked out of the gangway, they encountered the witness and his friends. The witness stated that he saw the defendants later in the day when they came out of the front door of the Paulina Street address, got into a cab with the television sets and drove off.

James Barlow testified that he and two friends walked into the gangway of the 7919 South Paulina address, where he observed two television sets outside the basement of James Hubbard's apartment which he recognized as the property of Robert Hubbard. He and his companions then took the television sets inside the Hubbard apartment and called the police and Mrs. Hubbard. The witness left the apartment to pick up Mrs. Hubbard, and left Caroline Hubbard there, along with several other children. When he returned about 3:30 p.m., the police had arrived on the scene.

Twelve-year-old Caroline Hubbard was examined by the court and found competent to testify. Under direct examination she stated that she resided at 7919 South Paulina and had returned to her residence about 3 p.m. on the afternoon of March 14, 1978. She said that her brother, James, John Barlow and several others were present in the apartment and that she saw two television sets that belonged to her uncle. She stated that she remained in the apartment with five other children after Barlow left. She testified that someone knocked on the back door and demanded the television sets. In the course of her testimony she also stated that she was about several feet from the door when the demand was made and saw

the middle part of the face of one of the men through the window of the door. She said that she heard one of the men say, "Bust the door down," and with that the door flew open. The children darted out, and she ran up to the second floor and hid behind a box. From her hiding place she testified that she heard the men walking downstairs and saw one tall man and one short man. She identified defendant Jones as the second man whom she saw from the rear carrying away her uncle's television set.

James Richmond identified defendants as the two men who flagged his cab in the vicinity of 79th and Ashland, and requested to be taken somewhere between 7920 and 7929 Paulina Street to pick up their television sets. As they pulled away from the Paulina address, he stated that he saw several children running from the building. He testified that he drove the defendants to 7926 South Morgan Street and saw them enter the building. When he was stopped by a squad car later in the day, he provided the police with the address of the building where he had taken the defendants and followed them to that address. He entered the building and there observed the defendants and the television sets which he had transported earlier in the day.

Robert Hubbard testified that he lived with Shirley Cotton and his boy, Torre, at the 7922 South Marshfield address and that on March 14, 1978, he left for work about 6 a.m. When he returned, he noticed that the window in the back door had been broken. He placed the value of the two missing television sets at about $350, and the receipt for the purchase of one of the television sets was entered into evidence.

Officer John Ward testified that he responded to a call at 7919 South Paulina on the date in question and talked with about 10 children there about what had taken place. After ascertaining the destination of defendants from James Richmond, he proceeded to an apartment at 7926 South Morgan Street. When the door of the apartment was opened, he observed two television sets on the floor, and when he looked into the bedroom, saw defendant Jones, fully clothed, lying in a bed with covers over his head. Upon further investigation, he discovered defendant, Miller, under the same bed. Both men and the television sets were then observed by the taxi driver.

After this testimony a stipulation was entered regarding the ages of the defendants and both sides rested. The State then made a closing argument, and the defense waived argument. The jury received instructions on the charges and after deliberating found the defendants guilty on all counts.

A hearing in aggravation and mitigation was held separately for each defendant. An extended term of 10 years was imposed on defendant Jones because of his prior felony conviction, while defendant Miller received a term of 1 to 3 years. This appeal follows.

Both defendants contend that they were denied the effective assis-

tance of counsel, and in support of their contention cite the failure of appointed counsel to make a closing argument, to object to an allegedly faulty information, and to object to the State's instruction on theft of over $150 and to submit an instruction on misdemeanor theft. At the outset we note that competency of counsel is determined from the totality of counsel's conduct at trial (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677), and that in order to establish lack of competent representation, it is necessary to demonstrate actual incompetence of counsel as reflected by the manner of carrying out his duties as a trial attorney which results in substantial prejudice without which the outcome would probably have been different. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416; *People v. Logue* (1970), 45 Ill. 2d 170, 258 N.E.2d 323.

In attempting to meet this burden, defendants place their greatest emphasis on the failure of appointed counsel to make a closing argument. They claim that counsel relinquished a last and vital opportunity to point out the weaknesses in the State's case, particularly with respect to the identification testimony and establishment of the value of the stolen property, which left them virtually unrepresented. A review of the record indicates otherwise.

■■ At trial, the defendants relied on the inability of the State to prove them guilty beyond a reasonable doubt, and offered no testimony. The waiver of a closing argument appears to be a part of this trial strategy, and, as such, it is not subject to review (*People v. Husar* (1974), 22 Ill. App. 3d 758, 318 N.E.2d 24). While careless and indifferent representation is not to be obscured by the invocation of tactical justifications, neither *is conscientious effort to be deprecated by hindsight. (People v. Kirkrand* (1958), 14 Ill. 2d 86, 150 N.E.2d 788.) In the case at bar defense counsel actively and aggressively represented the defendants. He engaged in pretrial motions and discovery, made an opening statement, cross-examined the State witnesses and made timely objections during the course of the trial. While the decision to waive closing argument may have been a lost opportunity to state defendants' case (see *People v. McMullen* (1980), 82 Ill. App. 3d 1042, 403 N.E.2d 539) and in the better light of hindsight may have been handled differently by another attorney (see *People v. Rodgers* (1978), 58 Ill. App. 3d 719, 374 N.E.2d 721), we do not believe that this decision indicates that trial counsel was incompetent. Defendants have failed to demonstrate how they were prejudiced and that the outcome of the trial would probably have been different, particularly in the light of the ample evidence against them.

■■ As further evidence of defense counsel's ineffectiveness, defendants point out his failure to make a motion in arrest of judgment based on the "obviously defective" information which they claim did not specify theft over $150 or the intent to permanently deprive the victim of his property.

The record reveals that when the case was called on April 26, 1978, the State moved to amend the information to include an additional count of burglary and one of theft of property of the value of more than $150. Defense counsel raised no objection, and the motion was granted. A motion in arrest of judgment may be made within 30 days following the entry of a verdict or finding of guilty, and shall be granted when the indictment, information or complaint does not charge an offense or when the court is without jurisdiction of the case. (Ill. Rev. Stat. 1977, ch. 38, par. 116—2.) Since there was no basis on which to file such a motion under the facts in the instant case, failure to do so will not support an allegation of incompetence.

Defendants lastly contend that counsel's failure to object to the State's instruction on theft over $150 and to submit an instruction on misdemeanor theft are also grounds on which to find ineffective representation by counsel. In support of this argument defendants contend that competent evidence on the value of the television sets had not been introduced at trial.

The record indicates that Shirley and Robert Hubbard both gave testimony on the value of their television sets. The original receipt for the purchase of the newer model was introduced into evidence, and the present value of the sets was placed at about $350. It has been held that cost, together with other proof, may afford the basis for a valid finding as to value. *People v. Rose* (1960), 19 Ill. 2d 292, 166 N.E.2d 566.

■■ Both parties are entitled to appropriate instructions which present their theories of the case to the jury when and if such theories are supported by the evidence. (*City of Chicago v. Mayer* (1974), 56 Ill. 2d 366, 308 N.E.2d 601.) In the case at bar the only evidence introduced on value was given by the State; there was none given by the defense which would have entitled them to an instruction on the matter. (*People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319. See also *People v. McEvoy* (1975), 33 Ill. App. 3d 409, 337 N.E.2d 437.) Therefore, defendants were not entitled to an instruction, and failure of counsel to object to the State's instruction or to submit a request for an instruction on misdemeanor theft cannot be considered inadequate representation. After considering the facts and circumstances in this case, we believe that defendants received adequate and competent representation, and reversal is unwarranted.

Defendant Jones further appeals the extended sentence imposed by the court contending that it was improper. He claims that in order to impose a greater penalty, the aggravating factor of a prior felony conviction had to be alleged and proved. (*People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499; *People v. Ramey* (1974), 22 Ill. App. 3d 916, 317 N.E.2d 143.) These cases cited by defendant are distinguishable from the one at bar, however, since both involved situations where a crime was elevated from a misdemeanor to a felony when certain aggravating

factors were present. Under these circumstances, the factors became additional elements of the crime which had to be charged and proved. See *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374.

■■ In the case at bar, the aggravating factors, which permitted the court to consider the imposition of an extended term were relevant only to sentencing. Section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)) provides that the court may consider prior convictions or heinous conduct as reasons to impose an extended term sentence. Imposition of an extended term is thus a discretionary matter with the court, which need not be charged in an information. (*People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374.) Likewise, the grade and degree of the offenses were not changed, and the aggravating factors did not become elements of the offenses which had to be pleaded and proved. (*People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718.) The extended term was a matter properly considered by the court only at the time of sentencing.

■■ Defendant Jones also argues that there is an ambiguity in the sentencing statutes which require that both aggravating factors set forth in section 5—5—3.2(b) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)) be present before the court may impose an extended term. We do not find this argument persuasive. The language of section 5—8—2(a) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a)) indicates the factors which the court may consider in imposing an extended term and does not require that both factors be present in a single case. Indeed, reference to section 5—5—3.2 clearly indicates that either a prior conviction *or* heinous conduct is sufficient. (*People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718; *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374; *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.) To conclude otherwise would defeat the purpose of the statute, and result in the exclusion of many classes of offenses from the possibility of extended-term sentencing. See discussion *People v. Mays* (1980), 80 Ill. App. 3d 340, 399 N.E.2d 718.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.